UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

FRANK EGAN,

                            PLAINTIFF,                **COMPLAINT**

           -AGAINST-                           **ECF CASE**

NEW YORK CITY, POLICE OFFICER MELVIN
CHITTUM and POLICE OFFICER CESAR POLANCO,
individually, and in their capacity as members of the New
York City Police Department,

                            DEFENDANTS.

------------------------------------------------------------------------ x

**PRELIMINARY STATEMENT**

1. This is a civil action in which plaintiff Mr. Frank Egan ("Mr. Egan") seeks relief for the violation of his rights secured by 42 USC 1983, the Fourth and Fourteenth Amendments to the United States Constitution.

2. The claims arise from an incident on or about March 9, 2015, in which officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected Mr. Egan to *inter alia* false arrest, malicious prosecution and denial of right to a fair trial.

3. Plaintiff seeks monetary damages (special, compensatory and punitive) against Defendants and an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 USC 1331, 42 USC 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5. Venue is laid within the United States District Court for the Southern District of New York in that the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## PARTIES

6. Plaintiff, Mr. Egan, is a 36-year-old citizen of the United States and at the time of the incident described herein resided at 2801 Coddington Avenue, Apartment 3, Bronx, NY 10461.

7. New York City is a municipal corporation organized under the laws of the State of New York.

8. Police Officer Melvin Chittum ("PO Chittum") and Police Officer Cesar Polanco ("PO Polanco"), at all times here relevant were members of the NYPD, and are sued in their individual and professional capacities.

9. At all times mentioned, defendants were acting under color of state law, under color of the statutes, ordinances, regulations, policies, and customs and usages of the City of New York.

## FACTUAL ALLEGATIONS

10. Mr. Egan manages the Enchanted Flower Boutique in New Rochelle, which is owned and operated by the family of Mr. Egan's wife, Tiffany Egan.

11. At the time of the incident, Mr. Egan and Tiffany were engaged and were planning their wedding.

12. On or about March 9, 2015, Mr. Egan finished work at the flower boutique and drove to Tiffany's home.

13. Mr. Egan stayed for approximately thirty minutes then drove to his home at 2801 Coddington Avenue, Apartment 3, Bronx, NY 10461.

14. Mr. Egan lived there with his mother, sister and sister's boyfriend Mr. Elehecer Balaguer, all of whom were present when Mr. Egan got home.

15. Mr. Egan was tired and went to bed.

16. Mr. Egan suffers from health conditions and often falls asleep in the early evening.

17. Later that evening, Mr. Egan was woken by his sister.

18. Mr. Egan could hear police helicopters outside and saw several police cars parked in the street.

19. Mr. Egan went into the kitchen, where PO Chittum and PO Polanco were present with Mr. Egan's mother, sister and Mr. Balaguer.

20. PO Chittum and PO Polanco accused Mr. Egan of shining a laser from the window of the house at passing aircraft.

21. Mr. Egan was shocked and told PO Chittum and PO Polanco that he had nothing to do with this.

22. There was a small pen-sized laser on top of the refrigerator in the kitchen that belonged to Mr. Balaguer, which Mr. Egan had never touched.

23. Upon information and belief, there was a lock on the laser that could only be opened by Mr. Balaguer.

24. Mr. Egan explained to the officers that he had never touched the laser in question.

25. PO Chittum and PO Polanco handcuffed Mr. Egan behind his back and took him to the 45th Precinct.

26. Officers questioned Mr. Egan on several occasions at the precinct.

27. PO Chittum repeatedly told Mr. Egan, in sum and substance, that he was in a lot of trouble and that he should just admit that he did it.

28. At all times during the incident, Mr. Egan repeatedly informed the officers that he had nothing to do with the laser and that it belonged to Mr. Balaguer.

29. Mr. Egan was held at the precinct overnight and taken to central bookings the next morning.

30. Mr. Egan was led out of the precinct in handcuffs in front of the gathered media.

31. Mr. Egan arrived at central bookings at approximately 12:45 pm on March 10, 2015.

32. Upon information and belief, Mr. Balaguer went to the 45th Precinct on March 10, 2015, and informed the officers that the laser belonged to him and he had shined the laser at the aircraft.

33. Mr. Egan did not see a judge until approximately 12:40 am on March 11, 2015, at which time he was charged with *inter alia* Criminal Possession of a Weapon, Reckless Endangerment, Directing at an Aircraft, and Assault with intent to cause physical injury to an Officer.

34. Mr. Egan was held on the barge at Rikers Island until approximately 11:00 pm on March 11, 2015, at which time he was released on bail.

35. A Notice of Statement pursuant to CPL 710.30(1)(a) filed by the District Attorney, falsely alleged that Mr. Egan, while at home, stated to PO Polanco "that's mine".

36. Mr. Egan was scheduled to appear before a Grand Jury on March 13, 2015.

37. On March 13, 2015, Mr. Egan appeared in court along with Mr. Balaguer, at which time Mr. Balaguer admitted to the judge that he had shined the laser at the aircraft.

38. Mr. Egan did not appear before the Grand Jury.

39. Mr. Egan still had to return to court on numerous occasions before the case was finally dismissed on or about October 13, 2015.

40. Mr. Egan continues to feel traumatized by the events of March 2015.

41. Mr. Egan's picture was widely publicized in the media in connection with these false accusations.

42. As a result, Mr. Egan's reputation in the community was damaged and his business suffered.

43. The media hounded Mr. Egan and his family after the incident.

44. Mr. Egan and Tiffany's wedding and honeymoon plans were disrupted by the incident.

45. Mr. Egan suffered following the incident and feels fear, embarrassment, humiliation, emotional distress, frustration, anxiety, and loss of liberty.

## FIRST CAUSE OF ACTION

(42 USC 1983 – False Arrest)

46. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

47. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

48. Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that plaintiff was falsely arrested by defendants.

49. Defendants confined plaintiff.

50. Plaintiff was aware of, and did not consent to, his confinement.

51. The confinement was not privileged.

52. Plaintiff has been damaged as a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

## SECOND CAUSE OF ACTION

(42 USC 1983 – Malicious Prosecution)

53. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

54. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

55. Defendants have deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in that plaintiff was maliciously prosecuted by defendants.

56. The malicious prosecution was initiated by defendants without legal justification and without probable cause, in that defendants caused the commencement and continuation of criminal proceedings against plaintiff, the proceedings terminated in favor of plaintiff, and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiff's rights.

57. Plaintiff has been damaged a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court.

### THIRD CAUSE OF ACTION

(42 USC 1983 –Denial of Right to a Fair Trial)

58. Plaintiff repeats and realleges each of the preceding allegations of this Complaint as if fully set forth herein.

59. Defendants have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 USC 1983.

60. Defendants have deprived plaintiff of his right to a fair trial, pursuant to the Fifth and Sixth Amendments to the United States Constitution.

61. Defendants created false information likely to influence a jury's decision and then forwarded that information to prosecutors, resulting in plaintiff suffering a deprivation of liberty and a violation of his rights.

62. Plaintiff has been damaged as a result of defendants' actions in an amount believed to equal or exceed the jurisdictional limit of this Court

### JURY DEMAND

63. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff respectfully requests that the court enter a Judgment against Defendants together with costs and disbursements as follows:

In favor of Plaintiff in an amount to be determined by a jury, but at least equal or exceeding the jurisdictional limit of this Court for each of Plaintiff's causes of action;

Awarding Plaintiff punitive damages in an amount to be determined by a jury;

Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action;

And such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 25, 2016

By: /s/
Malcolm Anderson (MA 4852)

PetersonDelleCave LLP
Attorney for Plaintiff
233 Broadway, Suite 1800
New York, NY 10279
(212) 240-9075